[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, in a termination of parental rights case. Because we conclude that the trial court failed to make the necessary predicate findings prior to terminating appellant's parental rights, we reverse.
This case concerns the future custody of three children: Shawn, Shawnta and Keshawn, presently ages nine, seven, and four respectively. The children's mother is appellant in the appeal; the children's father received service by publication, but did not appear before the trial court and is not a party to the appeal.
Although the record is less than clear in the details, it appears that appellee, Lucas County Children Services Board, became involved with this family in 1991 when it intervened and alleged that Shawnta, Shawn, and an older sibling were neglected and dependent. According to later testimony of the caseworker, appellant lacked stable housing and had been leaving the children in the care of others for long periods of time without advising the care-giver of her whereabouts. Appellant also failed to bring the children to numerous medical appointments. This complaint resulted in an adjudication of neglect. Appellant was awarded legal custody of the children, but protective supervision was given to appellee.
The 1991 adjudication gave rise to a case plan which required appellant to complete parenting classes, find stable housing, and submit to a substance abuse evaluation. Ultimately, some progress was reported.
In 1994, appellee filed a second dependency complaint that led to a stipulated finding that Shawnta, Shawn, and the older sibling were dependent. The children were then taken from appellant and placed with a maternal aunt. This arrangement was formalized in a January 1995 order. However, by the fall of that year, allegations of sexual abuse in the aunt's home arose and the children were returned to appellant. Appellee was to continue protective supervision.
Within a week of the return of the children, appellant moved without informing appellee. A caseworker found appellant and the children living with a friend a few weeks later. Shortly after that, the family moved into a place of their own, but were evicted for failure to pay rent. By the end of 1996, the family was staying with appellant's sister, then later moved to a place of their own where they were once more evicted for failure to pay rent. Appellant then took the children to a homeless shelter for a day and again moved in with appellant's sister. In February 1997, the family was once more living on their own.
The incident which triggered this family being brought before the court for the last time occurred in late February 1997. At that time a school bus driver attempted to drop off Shawnta at her home; however, the driver found no one there. After returning to the home several times over the next forty minutes, the driver was finally instructed to deliver Shawnta to children services. There, according to the caseworker, Shawnta reported that her mother was not at home and that her brother, seven-year-old Shawn, was outside the house without supervision. The caseworker went to appellant's home, found no one home, and picked up Shawn who was outside. At about 6:15 p.m., appellant called her caseworker inquiring about Shawnta's whereabouts. The caseworker testified that, when she called, appellant was unaware that Shawn was also missing. At this point, appellee sought and obtained a ex parte
temporary custody order for the three children.
Appellee then filed a complaint seeking temporary custody. Appellee alleged that the children were dependent and neglected. Following a hearing, the court issued a shelter care order. Appellee later amended its complaint for the purpose of seeking permanent custody of the children.
On May 19, 1997, bifurcated adjudicatory and dispositional hearings were held before a magistrate on appellee's complaint. Although appellant knew of the hearing date, she did not appear.
At the adjudicatory hearing, appellant's caseworker testified to her involvement in the "home alone" incident that triggered the proceedings. She also described the children, as she found them that day: hungry, dirty, and having a strong odor about them. The caseworker also testified that during the agency's three and one-half year involvement with the family, appellant had completed two parenting classes, but showed little evidence of implementing what she had learned. Further, the caseworker described the family's nomadic existence, history of evictions, and appellant's repeated failure to notify appellee of her whereabouts during these times. According to the caseworker, she suspected appellant might have a substance abuse problem, but when the agency arranged a drug screen, appellant failed to appear.
A school teacher, who had both Shawn and Shawnta in a developmentally disabled kindergarten class, also testified. She described Shawnta as academically "on target," but with severe behavioral disorders, "[a]ggressive, hitting, kicking, screaming, trying to run away, just out of control." These behaviors were exacerbated, according to the teacher, by long absences from school each time the family relocated. Shawnta missed seventeen full days of school in a four-month period between September 1996 and February 1997. The teacher also noted that the child was frequently dirty and inordinately hungry — sometimes eating three or four school provided meals at lunch. On inquiry, Shawnta told the teacher that at home, "* * * there was no food in the house or that mom ate it all." The teacher also described Shawn, who had been in her class the previous year, as possessing similar behavior, hygiene, nutrition, and attendance problems. On cross-examination, however, the teacher admitted the children did not appear malnourished.
At the conclusion of the adjudicatory hearing, the court made oral findings of dependency and neglect for Shawn and Shawnta and a finding of dependency for Keshawn.
The evidence of the dispositional hearing reprise much of that advanced at the adjudicatory hearing. Shawn and Shawnta's kindergarten teacher testified that there was observable improvement in the children's attitude since placement in foster care. Appellant's caseworker testified that appellant only attended two or three of the weekly visits with the children since they were removed from the home. The caseworker also opined that, since appellant had already completed two parenting classes without integrating into her behavior the lessons taught, further parenting classes would be futile. The caseworker advised the court that the children were adoptable and that it was appellee's position that termination of appellant's parental rights and an award of permanent custody to appellee would be in their best interests. The guardian ad litem concurred with this recommendation.
At the conclusion of the hearing, the magistrate issued a written report in which he found that due to the parents' lack of commitment demonstrated by their failure to support, visit or communicate with the children and appellant's, "* * * unwillingness or inability to provide an adequate permanent home * * *" the children could not or should not be placed with either parent within a reasonable period of time. The magistrate further concluded that granting permanent custody to appellee was in the children's best interest.
The magistrate's report was adopted by the trial court without objection.
Appellant now brings this appeal, setting forth the following three assignments of error:
 "1. The trial court erred in granting LCCSB permanent custody pursuant to Ohio Rev. Code § 2151.353(A).
 "A. LCCSB did not prove by clear and convincing evidence that the children could not or should not be placed with their mother within a reasonable amount of time.
 "B. LCCSB did not prove by clear and convincing evidence that permanent custody was in the best interest of the children.
 "C. The trial court failed to make the findings required by Ohio Rev. Code § 2151.419.
 "2. The trial court erred in allowing LCCSB to proceed directly from protective supervision to permanent custody without having temporary custody for at least six months prior to requesting permanent custody.
 "3. The trial court relied upon hearsay and improper evidence in its adjudicatory hearing."
Appellant, in subparts "A" and "B" of her first assignment of error, challenges the sufficiency of evidence upon which the trial court determined that the children could not or should not be placed with their mother and that termination of parental rights was in the children's best interest.
R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," R.C. 2151.414(B)(1), and (2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B). The statute sets forth a list of twelve predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); In re WilliamS. (1996), 75 Ohio St.3d 95, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence. R.C.2151.414(B). In re Forest S. (1995), 102 Ohio App.3d 338, 345. In this matter, the court found that,
 "The parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children though able to do so. The mother's failure to meet with or cooperate with LCCS demonstrate's [sic] an unwillingness or inability to provide an adequate permanent home for the children. There has been nothing presented to show that the mother would do anything other than repeat the same failed parental behavior patterns if given the chance to have the children returned to her."
The language the court employs closely parallels that found in R.C. 2151.414(E)(4) with one fatal exception. The statute permits entry of a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent when the parent or parents show, "* * * an unwillingness to provide an adequate permanent home for the child." Id. Here, the trial court finds that the mother's failure to cooperate with appellee demonstrates, "* * * an unwillingness or inability * * *" to provide an adequate home. As the Supreme Court has noted in reference to this section, "* * * it cannot be said that unwilling and unable are synonymous." In reWilliams S., supra, at 100. By suggesting alternatively that appellant might be unable to provide an adequate home, the trial court has not unequivocally placed appellant within the statute. Neither is there anything in the magistrate's report which would indicate reliance on any other of the twelve factors which are predicate to a finding that the children cannot or should not be placed with the parent. For this reason, the second portion of R.C. 2151.414(E)(4) is unavailable to support the court's dispositional conclusion.
It could be argued that the court nevertheless also found that the parents demonstrated a lack of commitment by failing to regularly support, visit, or communicate with the children. Such a finding, properly supported, could indeed support the disposition. However, while it is clear that this is true of the children's father, there is no evidence to support such a finding with respect to appellant. Indeed, the evidence is that until the children were taken from the home, appellant regularly supported, visited, and communicated with them.
 "It is well recognized that the right to raise a child is an `essential' and `basic' civil right. In re Murray
(1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, quoting Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558. Furthermore, a parent's right to the custody of his or her child has been deemed `paramount.' In re Perales
(1977), 52 Ohio St.2d 89, 97, 6 Ohio Op. 3d 293, 297, 369 N.E.2d 1047, 1051-1052.
 "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' In re Smith (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54. Therefore, parents `must be afforded every procedural and substantive protection the law allows.' Id." In re Hayes (1997), 79 Ohio St.3d 46, 48.
In this matter, the trial court has failed to unequivocally find one of the twelve statutorily predicate factors necessary to conclude that these children cannot or should not be placed with either parent. Accordingly, appellant's first assignment of error is well-taken.
Because our determination of appellant's first assignment of error negates the judgment, we need not reach the remainder of appellant's assignments of error.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded to said court for further proceedings in conformity with this opinion. Costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 ______________________________ James R. Sherck, J.
JUDGE
CONCUR.